UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| BRADLEY BAKER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:03-CV-913 RM |
| | ) | |
| ROCHESTER ROTATIONAL | ) | |
| MOLDING, INC., | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

This cause is before the court on the motion of Rochester Rotational Molding, Inc. for summary judgment on Bradley Baker's claims against the company under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count I), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Counts II and III), the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* (Count IV), and Indiana wage statutes, IND. CODE § 22-2-5-1 *et seq.,* § 22-2-6-1 *et seq.*, and/or § 22-2-9-1 *et seq.* (Count V). Mr. Bradley has filed his own cross-motion for partial summary judgment on Count V of his complaint. For the reasons that follow, the court denies Mr. Baker's motion and grants Rochester Rotational's motion in part.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" (quoting Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

The existence of cross-summary judgment motions doesn't imply that there are no genuine issues of material fact: "[p]arties have different burdens of proof

with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." R. J. Corman Derailment Servs., LLC v. International Union of Operating Eng'rs, Local 150, 335 F.3d 643, 647-648 (7th Cir. 2003). The court isn't required to grant summary judgment for either side when faced with cross-motions. "Rather, the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." Crespo v. Unum Life Ins. Co. of America, 294 F. Supp.2d 980, 991 (N.D. Ind. 2003) (citations omitted).

FACTS

The following facts are taken from the summary judgment record and are viewed as favorably to Mr. Baker as is reasonable. Rochester Rotational, a company co-owned by Marilyn and Allen Wade, manufactures rotationally molded products and builds custom molds in Rochester, Indiana. On July 5, 2002, Mr. Baker interviewed with Rochester Rotational office manager Kathy Rentschler and became employed at the company as Purchasing Manager/Inventory Control Agent. His responsibilities included ordering and purchasing raw materials, parts, and equipment for the company.

During the hiring process, Mr. Baker received the necessary health insurance forms, as well as a copy of Rochester Rotational's rules, although,

3

according to Mr. Baker, the copy of the rules he received didn't state, and he says he was never told, that insubordination was grounds for termination. Mr. Baker says Kathy Rentschler told him that the company's language policy was, "You can say any fucking thing you want around here." Mr. Baker says profanity was used everyday in the workplace at Rochester Rotational by management and employees alike.

In September 2002, Randy Dyer was hired as general manager of Rochester Rotational. Mr. Baker believed Mr. Dyer's job was to supervise the shop workers; because Mr. Baker worked in the office, he says he didn't think Mr. Dyer was his supervisor. Mr. Baker says he understood he was to report to Marilyn Ward and, sometimes, to Kathy Rentschler.

Mr. Baker says that in late October or early November, he confronted Randy Dyer about Mr. Dyer's use of racial and ethnic slurs and his unlawful hiring practices. Mr. Baker complained to Mr. Dyer that the slurs Mr. Dyer was using shouldn't even be used in people's homes anymore. Mr. Dyer responded, "Well, I don't know about your home, but we do." Mr. Baker also says he confronted Mr. Dyer when he witnessed Mr. Dyer rip up employment applications submitted to Rochester Rotational by two Hispanic applicants. According to Mr. Baker, he specifically told Mr. Dyer, "You can't do that," and Mr. Dyer responded, "I can do what I want." Even though Mr. Baker considered Mr. Dyer's actions to be discriminatory, he says he didn't pass the information on to Marilyn or Allen Ward or Kathy Rentschler because he didn't think doing so was necessary and he didn't

want to stir up trouble. Mr. Baker says he was hoping Mr. Dyer would stop the objectionable behavior.

Early on the morning of December 4, Allen Ward directed Mr. Baker to order a machine part before doing anything else. Mr. Baker reports that while he was trying to get the part ordered, Ms. Rentschler asked for his help because the computer system wasn't working, and at the same time Mr. Dyer asked to see and review some production records kept by Mr. Baker. Mr. Baker says a few minutes later, Mr. Dyer left and then returned from the shop to report that three rivet guns were broken. Mr. Baker claims that when Mr. Dyer demanded that he (Mr. Baker) attend to the broken guns, Mr. Baker explained that he couldn't help right then because he was busy trying to get a part ordered and the computers working. Mr. Baker says when he advised Mr. Dyer to talk to John about the problem, Mr. Dyer became upset, and so Mr. Baker decided to go to the shop and look at the rivet guns. Before he was able to leave his desk, though, Ms. Rentschler ran out of her office and told him he had to work on getting the computers fixed first.

Mr. Baker says John came to his work area a few minutes later and reported that he (John) had examined the rivet guns and discovered they just needed cleaning. According to Mr. Baker, Mr. Dyer then returned to the area to complain that he was still waiting for assistance. Mr. Baker says he told Mr. Dyer he was busy working on numerous other problems and further stated that "if you don't like the way I'm doing things, you can fuck off." Mr. Dyer left, but returned in a few minutes, informed Mr. Baker he was fired, and ordered him to get out of

the building. Mr. Baker says he continued to work because he didn't consider Mr.
Dyer to be his boss. Mr. Dyer then yelled that if Mr. Baker didn't leave right then,
he'd call the police. Mr. Baker says he locked up his desk and before leaving asked
Kathy Rentschler to have Marilyn Ward call him at home as soon as possible.

Ms. Ward called Mr. Baker later that afternoon and told him she had talked
to Mr. Dyer and others who had witnessed the incident, and had decided that
because Randy Dyer was the general manager of the company, she was taking Mr.
Dyer's side on the incident. She agreed to meet with Mr. Baker later that day. Mr.
Baker returned to Rochester Rotational that afternoon where he had a brief
conversation with Mr. Dyer and met with Ms. Ward. Mr. Baker had additional
meetings with Ms. Ward over the next few days to discuss the incident and his
desire to regain his position, but the termination decision wasn't reversed. Mr.
Baker maintains he was initially fired for cussing, but claims, "[g]iven the fact that
such language was commonplace within [Rochester Rotational's] facility,
[Rochester Rotational] backed away from this as its reason for terminating [his]
employment. Several reasons later, [Rochester Rotational] appears to have settled
on insubordination as its stated reason for terminating [his] employment." Resp.,
at 1.

Mr. Baker filed a complaint with the EEOC and, after receiving his right-to-
sue letter, filed suit in this court alleging discrimination based on disability and

6

gender, retaliation, and violations of ERISA and Indiana wage statutes.[1] Mr. Baker seeks back pay, compensatory, consequential, emotional, and punitive damages, treble damages on all unpaid wages, pre- and post-judgment interest, fees, costs, and reinstatement to his former position.

DISCUSSION

*Count II – Gender Discrimination*

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of the individual's gender. 42 U.S.C. § 2000e-2(a)(1). Mr. Baker may prove discrimination through direct evidence demonstrating discriminatory intent by the defendant or its agents. "An example of direct evidence would be an employer's admission that an adverse employment action was taken against an employee based solely on an impermissible ground, such as [gender]." Dandy v. United Parcel Serv., Inc., 388 F.3d 263, 272 (7th Cir. 2004).

Alternatively, Mr. Baker may proceed by offering indirect evidence of discrimination under the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If, under the indirect method, Mr. Baker

---

[1] Mr. Baker stated in his summary judgment response that discovery in this case had "generated insufficient evidence to prevail on his claim of discrimination under the ADA (Count I) and his claim under ERISA (Count IV). Accordingly, those claims are abandoned." Resp., at 2 n.1. Rochester Rotational is entitled to judgment on those two claims, and the court need not address the company's arguments with respect to Counts I and IV.

carries his burden of establishing a prima facie case, the burden shifts to Rochester Rotational to set forth a legitimate, non-discriminatory reason for its actions and "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." <u>Stockett v. Muncie Indiana Transit Sys.</u>, 221 F.3d 997, 1001 (7th Cir. 2000) (*quoting* <u>Texas Dep't of Comm'y Affairs v. Burdine</u>, 450 U.S. 248, 257 (1981)).

If Rochester Rotational sets forth a legitimate, non-discriminatory reason for its actions, the inference of discrimination disappears and Mr. Baker must prove, by a preponderance of the evidence, that the reason proffered by Rochester Rotational was a pretext for intentional discrimination. <u>Robin v. Espo Engineering Corp.</u>, 200 F.3d 1081, 1088 (7th Cir. 2000). "While the *McDonnell Douglas* approach is often called a 'burden shifting' method of proof, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Stockett v. Muncie Transit</u>, 221 F.3d at 1001.

Mr. Baker hasn't presented direct evidence of discrimination, so to prevail on his claim, he must show that (1) he belongs to a protected class, (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly-situated female employees. <u>Spearman v. Ford Motor Co.</u>, 231 F.3d 1080, 1087 (7th Cir. 2000). In a reverse discrimination case such as this – alleging

8

discrimination against a male – the first element of the prima facie case has been modified, requiring Mr. Baker to show "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against . . . [men] or evidence that there is something 'fishy' about the facts at hand." Gore v. Indiana Univ., 416 F.3d 590, 592 (7th Cir. 2004) (*quoting* Phelan v. City of Chicago, 347 F.3d 679, 684 (7th Cir. 2003)). Because this case involves a claim that "men discriminate against men in favor of women," Mr. Baker can establish the first element of the modified prima facie case by supplying evidence that "the men running the company are under pressure from affirmative action plans, customers, public opinion, the EEOC, a judicial decree, or corporate superiors imbued with belief in 'diversity' to increase the proportion of women in the company's workforce," or "the jobs in question are traditional 'women's work,' such as nursing, which the men running the company believe women can do better than men. . . . Thus, [Mr. Baker] must present some evidence to show that it is not surprising that [his] supervisors would discriminate against [him] because [he is a male]." Ineichen v. Ameritech, 410 F.3d 956, 960 (7th Cir. 2005) (*quoting* Preston v. Wisconsin Health Fund, 397 F.3d 539, 542 (7th Cir. 2005)).

Rochester Rotational maintains that while Mr. Baker can establish the third element – his termination was an adverse employment action – he can't establish any of the other elements of his prima facie case. Rochester Rotational says there is no evidence of any background circumstances that would demonstrate an inclination by the company to engage in gender discrimination, Mr. Baker can't

establish that he was meeting the company's legitimate performance expectations, and he can't show that any similarly-situated females were treated more favorably. Mr. Baker says he can demonstrate background circumstances that raise an inference that Mr. Dyer preferred female employees over male employees, he was performing his job satisfactorily, and similarly-situated female employees were treated more favorably.

*Modified Protected Class Element*

Rochester Rotational says there is no evidence of any background circumstances under the modified first element that would demonstrate an inclination by the company to engage in gender discrimination. Mr. Baker claims comments by Mr. Dyer provide sufficient background circumstances to raise an inference that Mr. Dyer preferred female over male employees. According to Mr. Baker

> Randy Dyer does not – I don't believe he wants any – any men in the office to work around, because one, most – I don't believe any men would put up with his – [the] things he does. And he finds it easier to buffalo women. He's told me that. And to – easier to push them around.

Deft. Exh. B (Baker Dep.), at 72.

Rochester Rotational argues in reply that two stray remarks by Mr. Dyer can't establish the background circumstances needed to show reverse discrimination. The court agrees. Even assuming the truth of Mr. Dyer's comments – that he found it easier to buffalo and push around women than men

10

– Mr. Baker hasn't demonstrated how those comments establish an inclination by Mr. Dyer or Rochester Rotational management to engage in gender discrimination. Mr. Baker hasn't offered any explanation of how Mr. Dyer's comments might demonstrate that Mr. Dyer, or other decision-makers within the company, were under pressure to increase the proportion of women working for the company or that they believed jobs at Rochester Rotational would be better performed by women. And while there "may be other situations as well in which it is plausible to expect that men might discriminate against men and in favor of women," Preston v. Wisconsin Health Fund, 397 F.3d 539, 542 (7th Cir. 2005), Mr. Baker hasn't set forth or pointed to evidence of any other situation that would support his claim in this regard. Mr. Baker hasn't carried his burden of establishing the first element under the modified prima facie test.

*Job Performance*

The parties disagree about the second element. Rochester Rotational says Mr. Baker wasn't meeting the company's legitimate performance expectations because he didn't comply with directions and mandates of management and he engaged in the insubordinate conduct. Mr. Baker disagrees with Rochester Rotational's assessment of his job performance and directs the court to consider this prong of the prima facie case "in conjunction with [his] evidence of pretext." [Resp., at 11.] The court, though, is under no obligation to search Mr. Baker's submission for arguments that might be relevant to this second element of his

11

prima facie showing. Ritchie v. Glidden Co., 242 F.3d 713, 723 (7th Cir. 2001). His explanation in this regard doesn't tend to show that his performance was adequate. Leffel v. Valley Financial Serv., 113 F.3d 787, 791 (7th Cir. 1997).

## *Similarly-Situated Employee*

With respect to the fourth element, Rochester Rotational says Mr. Baker can't show that any similarly situated females were treated more favorably. To establish a violation of Title VII, Mr. Baker must show that while he was exposed to adverse terms and conditions of employment, similarly-situated female employees at Rochester Rotational were not. "To meet his burden of demonstrating that another employee is 'similarly situated' [Mr. Baker] must demonstrate that there is someone who is directly comparable to him in all material respects." Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). Mr. Baker must show "not only that the employees reported to the same supervisor, engaged in the same conduct, and had the same qualifications, but also show that there were no differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them." Ineichen v. Ameritech, 410 F.3d 956, 960-961 (7th Cir. 2005).

Mr. Baker alleges that he was disciplined more severely than female workers at Rochester Rotational. Mr. Baker says that even though he admittedly told Randy Dyer to "fuck off," use of profanity was commonplace at Rochester Rotational. [Baker Dep., at 73.] According to Mr. Baker, Kathy Rentschler, the

office manager, cussed at the shop foreman [Baker Dep., at 76] and refused to comply with a directive by Marilyn Wade [Baker Dep., at 214]; Sharry Russell, Rochester Rotational's receptionist, regularly used profanity at work [Baker Dep., at 78-79 ]; and Marilyn Wade, co-owner of the company, used offensive language on occasion [Baker Dep., at 79]. Mr. Baker complains that no female employee was fired for cussing or refusing to follow instructions.

Mr. Baker directed profanity at and was fired by Randy Dyer. Although Mr. Baker has alleged insubordinate behavior and use of improper language by other Rochester Rotational employees, he hasn't alleged or come forth with evidence sufficient to establish that those other employees exhibited insubordinate behavior or directed profanity at Randy Dyer and were treated more favorably. Mr. Baker says Kathy Rentschler refused a directive from Marilyn Wade, not Randy Dyer, and while Mr. Baker says Ms. Rentschler used profanity, he hasn't alleged she directed any such remarks at Mr. Dyer. Mr. Baker says Sharry Russell regularly cussed at work and Marilyn Wade occasionally used offensive language, but he hasn't alleged that either of them cussed at Randy Dyer or exhibited insubordinate behavior towards with Mr. Dyer. "Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000).

Mr. Baker has the burden of establishing "the similarity between himself and the proposed comparable employees." Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 546 (7th Cir. 2002). He must demonstrate that a female employee at Rochester Rotational occupied the same position and engaged in similar past misconduct, "but as a result of her misconduct she (unlike Mr. Baker) was treated differently (i.e., more favorably) for no legitimate reason." Jordan v. City of Gary, Ind., 396 F.3d 825, 834 (7th Cir. 2005); see also Hudson v. Chicago Transit Auth., 375 F.3d 552, 561 (7th Cir. 2004) (employees must be "directly comparable in all material respects."). He hasn't done so.

Even viewing the record in the light most favorable to Mr. Baker, the court concludes he hasn't carried his burden of coming forth with evidence to support a finding that similarly-situated female employees were treated more favorably with respect to discipline at Rochester Rotational or that he was the victim of discrimination based on his gender in violation of 42 U.S.C. § 2000e-2. Rochester Rotational is entitled to summary judgment on Mr. Baker's claim of gender discrimination.

*Count III – Retaliation*

Mr. Baker claims he was the victim of retaliation after he complained about discriminatory acts of Mr. Dyer. 42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful

14

employment practice by [Title VII]." Thus, Title VII "protects persons not just from certain forms of job discrimination [and harassment], but from retaliation for complaining about the types of discrimination it prohibits." Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1007 (7th Cir. 2000).

Under the direct method of proof, Mr. Baker must show that he engaged in statutorily protected activity, he suffered an adverse employment action, and a causal connection between the two, that is, that Rochester Rotational wouldn't have taken the adverse employment action "but for" his protected activity. Moser v. Indiana Dep't of Corrections, 406 F.3d 895, 903 (7th Cir. 2005). Alternatively, Mr. Baker may proceed under the indirect method, which requires him to show that "(1) after lodging a complaint about discrimination, (2) only he, and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) he was performing his job in a satisfactory manner." Whittaker v. Northern Illinois Univ., No. 04-3759, 2005 WL 2291736, * 6 (7th Cir. Sept. 21, 2005). If Mr. Baker establishes a prima facie case, the burden shifts to Rochester Rotational to come forward with a legitimate, non-retaliatory reason for its action; if Rochester Rotational establishes such a reason, the burden shifts back to Mr. Baker to prove, by a preponderance of the evidence, that the reasons proffered by Rochester Rotational were a pretext for discrimination. Ballance v. City of Springfield, No. 04-3410, 2005 WL 2271911, * 2 (7th Cir. Sept. 19, 2005).

Rochester Rotational argues Mr. Baker can't establish a prima facie case of retaliation because he didn't engage in protected expression, wasn't meeting the company's legitimate performance expectations, and hasn't identified any similarly-situated employee who was treated more favorably. The company argues in the alternative that even if Mr. Baker could carry his burden of demonstrating he suffered retaliation for his complaints to Randy Dyer, the company has a legitimate, non-discriminatory reason for his termination. Mr. Baker argues in response that he engaged in protected activity as required by Title VII, similarly-situated employees were treated more favorably, and that Rochester Rotational's reason for his termination was a pretext for discrimination. Because Mr. Baker hasn't argued under the direct method – that is, he hasn't presented any evidence of a causal link between his protected activity and his termination – the court will examine his duty to establish a prima facie case under the indirect method of proof.

*Protected Activity*

Mr. Baker maintains he engaged in protected activity when he confronted and voiced his objection to Mr. Dyer in late October or early November 2002 about Mr. Dyer's use of ethnic and racial slurs and remarks about women, which Mr. Baker considered to be disgusting and discriminatory. Mr. Baker says on numerous occasions, Mr. Dyer "engaged in behavior that was completely unfitting of any corporate business in [the] way he spoke about employees and in his hiring

practices, and in the way he even taught the girl up front to take hiring applications." Baker Dep., at 83. More importantly, Mr. Baker also says he witnessed Mr. Dyer throwing away employment applications submitted by Hispanic applicants. Mr. Baker reports he saw Mr. Dyer ripping up employment applications and directing Rochester Rotational's receptionist to throw away any future applications of Hispanic applicants. [Baker Dep., at 85-86.] He says he told Mr. Dyer, "You can't do that," and Mr. Dyer responded, "Fuck 'em, I can do what I want." [Baker Dep., at 87.] Mr. Baker maintains he engaged in protected activity when he confronted Mr. Dyer about these actions.[2]

While Mr. Baker notes that opposition to an unlawful employment practice "clearly includes complaining to management," Resp., at 6, he didn't think Mr. Dyer was his supervisor or a member of Rochester Rotational management when he made his complaint; Mr. Baker considered Mr. Dyer to be a mere co-worker. [Baker Dep., at 66.] Mr. Baker admits he didn't report Mr. Dyer's actions to Marilyn Wade, Allen Wade, or Kathy Rentschler, the people Mr. Baker considered to be his supervisors and Rochester Rotational management. *See* Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004) (employer must have had actual knowledge of the complaints for its decision to be retaliatory). Viewing the facts in the light most favorable to Mr. Baker as the court must do at the

---

[2] 42 U.S.C. § 2000e-2(a)(2) makes it unlawful for an employer "to limit, segregate, or classify . . . applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race, color, religion, sex, or national origin."

summary judgment stage, and recognizing that Rochester Rotational says Randy Dyer was the general manager of the company who had the power to hire, fire, and discipline employees, Deft. Exh. A [M. Wade Declaration], ¶ 4, Mr. Baker's objection to Mr. Dyer's destruction of employment applications would qualify as objecting to activity violative of Title VII. *See* Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir. 2002) (employee must "reasonably believe[] in good faith that the practice [he] opposed violated Title VII").

### *Job Performance*

As already discussed, the parties disagree about the second element. Rochester Rotational says Mr. Baker wasn't meeting the company's legitimate performance expectations because he didn't comply with directions and mandates of management and he engaged in the insubordinate conduct. Mr. Baker says Rochester Rotational "is wrong" and directs the court to consider this prong of the prima facie case "in tandem with [his] evidence of pretext." [Resp., at 8.] Again, the court is under no obligation to scour Mr. Baker's submission for arguments that might be relevant to this second element of his prima facie showing. Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir. 1995). Mr. Baker hasn't carried his burden of establishing the second element of his prima facie case.

### *Similarly-Situated Employee*

A prima facie case of retaliation, like gender discrimination, requires Mr. Baker to show that he was treated differently than a similarly-situated, non-complaining employee who was not in the protected class. As discussed in connection with his discrimination claim, Mr. Baker argues that three female employees at Rochester Rotational – Kathy Rentschler, Sharry Russell, and Marilyn Ward – didn't engage in protected activity but weren't terminated for using profanity. Mr. Baker, though, points to no evidence that any employee directed profanity at and wasn't disciplined by the same decisionmaker who made the adverse employment decision in his case, Randy Dyer. *See* Little v. Illinois Dep't of Revenue, 369 F.3d 1007, 1012 (7th Cir. 2004) ("The discipline that those employees may, or may not, have received therefore sheds no light on the decision to discharge Little."). Mr. Baker hasn't produced evidence sufficient to raise an inference that a similarly-situated, non-complaining employee was treated more favorably or that Rochester Rotational "applied its legitimate employment expectations in a disparate manner (i.e., applied expectations to similarly-situated [non-complaining] employees in a more favorable manner)." Peele v. Country Mut. Ins. Co., 288 F.3d 319, 329 (7th Cir. 2002). The company is entitled to summary judgment on Mr. Baker's retaliation claim.

*Count V – Indiana Wage Statute*

Mr. Baker alleges in Count V of his complaint that Rochester Rotational violated Indiana's wage statutes, IND. CODE § 22-2-5-1 *et seq.*, § 22-2-6-1 *et seq.*, and § 22-2-9-1 *et seq.*, in connection with his discharge. Rochester Rotational has moved for summary judgment on his claim and Mr. Baker has filed a motion for partial summary judgment relating to his claims in Count V. In any civil action in which the court has original jurisdiction, 28 U.S.C. § 1367 provides that the court shall have "supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The court may, and generally should, relinquish supplementary jurisdiction over state law claims, however, when all federal claims are dismissed before trial. *See* 28 U.S.C. § 1367(c)(4); <u>Groce v. Eli Lilly & Co.</u>, 193 F.3d 496, 500-501 (7th Cir. 1999) (discussing general rule that when federal claims have been dismissed before trial, district court should relinquish jurisdiction over state claims). That course is appropriate here.

Although the parties have addressed Mr. Baker's state law claims, resolution of an Indiana resident's claim against an Indiana employer relating to the state's wage laws is best left to Indiana's courts. Dismissal of the state law claims will delay their resolution somewhat, but it will not require replication of preparation for trial. Therefore, having granted summary judgment on the federal claims, the court will dismiss Mr. Baker's state wage law claims.

20

CONCLUSION

Based on the foregoing, the court

(1) GRANTS IN PART and DENIES IN PART the motion of defendant Rochester Rotational Molding, Inc. for summary judgment [docket # 34] as follows: the motion is GRANTED as to all claims contained in Counts I, II, III, IV of the complaint, and DENIED with respect to Count V;

(2) DISMISSES Count V of the plaintiff's complaint; and

(3) DENIES AS MOOT Mr. Baker's motion for partial summary judgment on Count V [docket # 35].

SO ORDERED.

ENTERED:   September 27, 2005

   /s/ Robert L. Miller, Jr.
The Honorable Chief Judge
United States District Court

21